UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 8:16 cr 353 T 26 JSS

NICHOLAS A. BORGESANO, JR.,
BRADLEY SIRKIN,
SCOTT D. PICCININNI,
EDWIN PATRICK YOUNG,
WAYNE M. KREISBERG,
MATTHEW N. STERNER,
PETER D. WILLIAMS, and
JOSEPH DEGREGORIO

18 U.S.C. § 1349
18 U.S.C. § 1956(h)
18 U.S.C. § 1957
18 U.S.C. § 982 (forfeiture)

SEALED

**INDICTMENT**

The Grand Jury charges:

**General Allegations**

At all times relevant to this Indictment:

A.     **The Medicare Program**

1.     The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services, through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare.  Individuals who

received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2.      Medicare programs covering different types of benefits were separated into different program "parts."  Part D of Medicare (the "Medicare Part D Program") subsidized the costs of prescription drugs for Medicare beneficiaries in the United States. The Medicare Part D Program was enacted as part of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 and went into effect on January 1, 2006.

3.      In order to receive Part D benefits, a beneficiary enrolled in a Medicare drug plan. Medicare drug plans were operated by private companies approved by Medicare.  Those companies were often referred to as drug plan "sponsors."  A beneficiary in a Medicare drug plan could fill a prescription at a pharmacy and use his or her plan to pay for some or all of the prescription.

4.      A pharmacy could participate in Part D by entering a retail network agreement directly with a plan or with one or more Pharmacy Benefit Managers ("PBMs").  A PBM acted on behalf of one or more Medicare drug plans. Through a plan's PBM, a pharmacy could join the plan's network.  When a Part D beneficiary presented a prescription to a pharmacy, the pharmacy submitted a claim either directly to the plan or to a PBM that represented the beneficiary's Medicare drug plan. The plan or PBM determined whether the pharmacy was entitled to payment for each claim and periodically paid the pharmacy for outstanding claims. The drug plan's sponsor reimbursed the PBM for its payments to the pharmacy.

5.     A pharmacy could also submit claims to a Medicare drug plan to whose network the pharmacy did not belong.  Submission of such out-of-network claims was not common and often resulted in smaller payments to the pharmacy by the drug plan sponsor.

6.     Medicare, through CMS, compensated the Medicare drug plan sponsors.   Medicare paid the sponsors a monthly fee for each Medicare beneficiary of the sponsors' plans.  Such payments were called capitation fees. The capitation fee was adjusted periodically based on various factors, including the beneficiary's medical conditions.   In addition, in some cases where a sponsor's expenses for a beneficiary's prescription drugs exceeded that beneficiary's capitation fee, Medicare reimbursed the sponsor for a portion of those additional expenses.

7.     Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), that affected commerce, and as that term is used in Title 18, United States Code, Section 1347.

8.     Medicare was a "health care benefit program," as defined by Title 42, United States Code, Section 1320a-7b(t), that affected commerce, and as that term is used in Title 42, United States Code, Section 1320a-7b(b).

9.     Express Scripts Incorporated ("Express Scripts") and Caremark LLC d/b/a CVS/Caremark ("CVS/Caremark") were Medicare drug plan sponsors.

3

**B.**     **The TRICARE Program**

10.     TRICARE was a health care program of the United States Department of Defense ("DOD") Military Health System that provided coverage for DOD beneficiaries worldwide, including active duty service members, National Guard and Reserve members, retirees, their families, and survivors.  Individuals who received health care benefits through TRICARE were referred to as TRICARE beneficiaries.  The Defense Health Agency ("DHA"), an agency of the DOD, was the military entity responsible for overseeing and administering the TRICARE program.

11.     TRICARE was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), that affected commerce, and as that term is used in Title 18, United States Code, Section 1347.

12.     TRICARE was a "health care benefit program," as defined by Title 42, United States Code, Section 1320a-7b(t), that affected commerce, and as that term is used in Title 42, United States Code, Section 1320a-7b(b).

13.     TRICARE provided coverage for certain prescription drugs, including certain compounded drugs, that were medically necessary and prescribed by a licensed medical professional.  Express Scripts administered TRICARE's prescription drug benefits.

14.     TRICARE beneficiaries could fill their prescriptions through military pharmacies, TRICARE's home delivery program, network pharmacies, and non-network pharmacies.  If a beneficiary chose a network pharmacy, the pharmacy

4

would collect any applicable co-pay from the beneficiary, dispense the drug to the beneficiary, and submit a claim for reimbursement to Express Scripts, which would in turn adjudicate the claim and reimburse the pharmacy directly or through a Pharmacy Services Administrative Organization ("PSAO").  To become a network pharmacy, a pharmacy agreed to be bound by, and comply with, all applicable State and Federal laws, specifically including those addressing fraud, waste, and abuse.

**C.**     **Privately Insured Drug Plans**

15.     Commercial insurance companies, employers, and private entities offered drug plans which were administered and operated by PBMs.    A beneficiary in a privately insured drug plan could fill a prescription at a pharmacy and use his or her plan to pay for some or all of the prescription.

16.     A pharmacy could participate in a privately insured drug plan by entering an agreement with one or more PBMs acting on behalf of a privately insured plan.  When a privately insured beneficiary presented a prescription to a pharmacy, the pharmacy submitted a claim to a PBM that represented the beneficiary's privately insured drug plan. The plan or PBM determined whether the pharmacy was entitled to payment for each claim and periodically paid the pharmacy for outstanding claims. The drug plan's sponsor reimbursed the PBM for its payments to the pharmacy.

17.     Express Scripts, OptumRX, Inc. ("OptumRX"), CVS/Caremark, MedImpact Healthcare Systems, Inc. ("MedImpact"), and Catamaran Corporation

("Catamaran") were each a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), that affected commerce, and as that term is used in Title 18, United States Code, Section 1347.

**D.      Compounded Drugs Generally**

18.      In general, "compounding" is a practice in which a licensed pharmacist, a licensed physician, or, in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist, combines, mixes, or alters ingredients of a drug or multiple drugs to create a drug tailored to the needs of an individual patient.  Compounded drugs are not approved by the U.S. Food and Drug Administration ("FDA"); that is, the FDA does not verify the safety, potency, effectiveness, or manufacturing quality of compounded drugs. The Florida State Board of Pharmacy regulates the practice of compounding in the State of Florida.

19.      Compounded drugs may be prescribed by a physician when an FDA-approved drug does not meet the health needs of a particular patient.  For example, if a patient is allergic to a specific ingredient in an FDA-approved medication, such as a dye or a preservative, a compounded drug can be prepared excluding the substance that triggers the allergic reaction. Compounded drugs may also be prescribed when a patient cannot consume a medication by traditional means, such as an elderly patient or child who cannot swallow an FDA-approved pill and needs the drug in a liquid form that is not otherwise available.

E.    **Advance Funding**

20.    Advance Benefit Funding Sources LLC ("ABFS") was a privately owned business that provided cash flow management services to pharmacies.

21.    ABFS monitored the claims submitted by their customer pharmacies to PBMs and remitted payments, less ABFS' administrative fee, to their customer pharmacies for those claims.  In this way, ABFS' customer pharmacies paid ABFS a fee for immediate access to anticipated PBM reimbursement payments.

22.    ABFS' customer pharmacies were required to instruct PBMs to which the customer pharmacies submitted claims to reimburse ABFS directly for those claims rather than the customer pharmacies.

F.    **The Defendants, Co-conspirators, and Related Companies**

23.    A to Z Pharmacy, Inc. ("A to Z Pharmacy") was a Florida corporation that had a purported principal place of business at 9039 Little Road, New Port Richey, Pasco County, Florida and purportedly provided prescription drugs to patients.

24.    Havana Pharmacy and Discount, Inc. ("Havana Pharmacy") was a Florida corporation that had a purported principal place of business at 1001 SW 8th Street, Miami, Miami-Dade County, Florida and purportedly provided prescription drugs to patients.

25.    Jaimy Pharmacy Inc. ("Jaimy Pharmacy") was a Florida corporation that had a purported principal place of business at 5080 E. 4th Avenue, Suite B,

Hialeah, Miami-Dade County, Florida and purportedly provided prescription drugs to patients.

26.     Medplus Pharmacy Corp. ("Medplus/New Life Pharmacy") was a Florida corporation that had a purported principal place of business at 13016 SW 120th Street, Miami, Miami-Dade County, Florida, purportedly provided prescription drugs to patients, and also did business as New Life Pharmacy.

27.     Metropolitan Pharmacy Corp. ("Metropolitan Pharmacy") was a Florida corporation that had a purported principal place of business at 3253 NW 7th Street, Miami, Miami-Dade County, Florida and purportedly provided prescription drugs to patients.

28.     Pharmachoice, Inc. ("Pharmachoice") was a Florida corporation that had a purported principal place of business at 6045 SW 8th Street, Miami, Miami-Dade County, Florida and purportedly provided prescription drugs to patients.

29.     Prestige Pharmacy and Medical Supplies, Inc. ("Prestige Pharmacy") was a Florida corporation that had a purported principal place of business at 2150 West 76th Street, Suite 106, Hialeah, Miami-Dade County, Florida and purportedly provided prescription drugs to patients.

30.     Empire Business Investment, Inc. ("Empire Business Investment") was a Florida corporation that had a purported principal place of business at 8019 Ridge Road, Port Richey, Pasco County, Florida.

31.    NB Holdings Group, Corp. ("NB Holdings") was a Florida corporation that had a purported principal place of business at 8019 Ridge Road, Port Richey, Pasco County, Florida.

32.    NB Investment Enterprises, Inc. ("NB Investment") was a Florida corporation that had a purported principal place of business at 8019 Ridge Road, Port Richey, Pasco County, Florida.

33.    Nick AB Services Corp. ("Nick AB Services") was a Florida corporation that had a purported principal place of business at 10331 County Lake Drive, Port Richey, Pasco County, Florida.

34.    A to Z Medical Billing Svc Inc. ("A to Z Medical Billing") was a Florida corporation that had a purported principal place of business 8019 Ridge Road, Port Richey, Pasco County, Florida.

35.    NB Motorsports Corp. ("NB Motorsports") was a Florida corporation that had a purported principal place of business at 8019 Ridge Road, Port Richey, Pasco County, Florida.

36.    Biovis Medical Marketing, Inc. ("Biovis") was a Florida corporation that had a purported principal place of business at 5550 Westshore Drive, New Port Richey, Pasco County, Florida.

37.    Premier Bio-Tech Solutions LLC ("Premier Bio-Tech") was a Florida limited liability company that had a purported principal place of business at 1515 S. Federal Highway, Suite 304, Boca Raton, Palm Beach County, Florida.

38.     N.I.C. Marketing Group, LLC ("N.I.C. Marketing") was a Florida limited liability company that had a purported principal place of business at 101 N.E. 3rd Avenue, Suite 1500, Fort Lauderdale, Broward County, Florida.

39.     Biotech Marketing Group, Inc. ("Biotech Marketing") was a Florida corporation that had a purported principal place of business at 7310 W. Mcnab Road, Suite 202, Tamarac, Broward County, Florida.

40.     Biotech Advisory Network, Inc. ("Biotech Advisory") was a Florida corporation that had a purported principal place of business at 401 E. Las Olas Boulevard, Suite 14, Fort Lauderdale, Broward County, Florida.

41.     WMK Marketing Group, Inc. ("WMK Marketing") was a Florida corporation that had a purported principal place of business at 6625 NW 122nd Avenue, Parkland, Broward County, Florida.

42.     Southeast Medical Consulting LLC ("Southeast Medical Consulting") was a Florida limited liability company that had a purported principal place of business at 12157 W. Linebaugh Avenue, Suite 405, Tampa, Hillsborough County, Florida.

43.     Tinto, Inc. ("Tinto") was a Florida corporation that had a purported principal place of business at 18132 Patterson Road, Odessa, Hillsborough County, Florida.

44.     D Class, Inc. ("D Class") was a Florida corporation that had a purported principal place of business at 13216 Shadow Lake Boulevard, Hudson, Pasco County, Florida.

45.     Defendant NICHOLAS A. BORGESANO, JR. was a pharmacy technician registered in the State of Florida and President of A to Z Pharmacy; Medplus/New Life Pharmacy; Metropolitan Pharmacy; Havana Pharmacy; Jaimy Pharmacy; Biovis Medical Marketing; A to Z Medical Billing; NB Holdings; NB Investment; Empire Business Investment; and NB Motorsports.

46.     Defendant BRADLEY SIRKIN was a Managing Member of Premier Bio-Tech.

47.     Defendant SCOTT A. PICCININNI was a Managing Member of Premier Bio-Tech and N.I.C. Marketing.

48.     Defendant EDWIN PATRICK YOUNG was a pharmacist licensed in the State of Florida and President of Jaimy Pharmacy.

49.     Defendant WAYNE M. KREISBERG was President of WMK Marketing, Director of Biotech Advisory, and controlled Biotech Marketing Group.

50.     Defendant MATTHEW N. STERNER was a Managing Member of Southeast Medical Consulting.

51.     Defendant PETER D. WILLIAMS was a physician licensed to practice in the State of Florida.

52.     Defendant JOSEPH DEGREGORIO was an employee of A to Z Pharmacy and President of Pharmachoice and Prestige Pharmacy.

**G.     Bank Accounts**

53.     NICHOLAS A. BORGESANO, JR. established and maintained signature authority on bank accounts for A to Z Pharmacy with SunTrust Bank,

account numbers ending 2567; 2119; 6378; and with Synovus Bank, account numbers ending 9479; 9784; and 9792.

54.    NICHOLAS A. BORGESANO, JR. established and maintained signature authority on a bank account for Havana Pharmacy with Synovus Bank, account number ending 9560, with SunTrust Bank, account number ending 1072, and with Continental Bank, account number ending 8124.

55.    NICHOLAS A. BORGESANO, JR. established and maintained signature authority on a bank account for Medplus/New Life Pharmacy with Synovus Bank, account number ending 9511, and with SunTrust Bank, account number ending 4494.

56.    NICHOLAS A. BORGESANO, JR. established and maintained signature authority on a bank account for Metropolitan Pharmacy with SunTrust Bank, account number ending 1049, and with Synovus Bank, account number ending 9529.

57.    NICHOLAS A. BORGESANO, JR. established and maintained signature authority on a bank account for NB Investment Enterprises with SunTrust Bank, account number ending 4091.

58.    NICHOLAS A. BORGESANO, JR. established and maintained signature authority on a bank account for NB Holdings Group with SunTrust Bank, account number ending 1322, and with Synovus Bank, account number ending 9552.

59.     NICHOLAS A. BORGESANO, JR. established and maintained signature authority on a bank account for NB Holdings Group d/b/a Jaimy Pharmacy with SunTrust Bank, account number ending 1363.

60.     NICHOLAS A. BORGESANO, JR. established and maintained signature authority on a bank account for NB Investment Enterprises with Synovus Bank, account number ending 9537.

61.     NICHOLAS A. BORGESANO, JR. established and maintained signature authority on a bank account for NB Motorsports with Synovus Bank, account number ending 9545.

62.     NICHOLAS A. BORGESANO, JR. established and maintained signature authority on a bank account for A to Z Medical Billing Service with Synovus Bank, account number ending 9487.

63.     NICHOLAS A. BORGESANO, JR. established and maintained signature authority on a bank account for Prestige Pharmacy with Synovus Bank, account number ending 9503.

64.     NICHOLAS A. BORGESANO, JR. established and maintained signature authority on bank accounts for himself with Synovus Bank, account numbers ending 0220 and 0238, with SunTrust Bank, account numbers ending 9087, 2414, 4778, and 2575, and with TD Bank, account number ending 6033.

65.     NICHOLAS A. BORGESANO, JR. established and maintained signature authority on a bank account for Nick AB Services with SunTrust Bank, account number ending 2935.

66.     Individual T.S. and Individual N.P. established and maintained signature authority on a bank account for Premier Bio-Tech Solutions with TD Bank, account number ending 1133, for the benefit of BRADLEY SIRKIN and SCOTT PICCININNI.

67.     SCOTT PICCININNI and Individual N.P. established and maintained signature authority on a bank account for N.I.C. Marketing Group with TD Bank, account number ending 1257.

68.     WAYNE M. KREISBERG established and maintained signature authority on a bank account for WMK Marketing Group with Wells Fargo Bank, account number ending 7891.

69.     WAYNE M. KREISBERG established and maintained signature authority on bank accounts for Biotech Advisory Network with SunTrust Bank, account numbers ending 4816 and 4480.

70.     MATTHEW N. STERNER established and maintained signature authority on a bank account for himself with JP Morgan Chase Bank, account number ending 6265.

71.     MATTHEW N. STERNER established and maintained signature authority on a bank account for Southeast Medical Consulting with JP Morgan Chase Bank, account number ending 2789.

## COUNT 1
### (Conspiracy to Commit Health Care Fraud and Wire Fraud)
### (18 U.S.C. § 1349)

1.      Paragraphs 1 through 71 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      Beginning in or around October 2012 and continuing through in or around December 2015, in the Middle District of Florida, and elsewhere, the defendants,

NICHOLAS A. BORGESANO, JR.,
BRADLEY SIRKIN,
SCOTT D. PICCININNI
EDWIN PATRICK YOUNG,
WAYNE M. KREISBERG,
MATTHEW N. STERNER,
PETER D. WILLIAMS, and
JOSEPH DEGREGORIO

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully combine, conspire, confederate and agree with each other and with others, known and unknown to the Grand Jury, to commit certain offenses, that is:

a.      To knowingly and willfully execute a scheme and artifice to defraud health care benefit programs affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, TRICARE, and private insurance administered by PBMs, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in

connection with the delivery and payment for health care benefits, items and services, in violation Title 18, United States Code, Section 1347; and

b.       To knowingly and with the intent to defraud devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations and promises were false and fraudulent when made, and did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, writing, signs, signals, pictures and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## Purpose of the Conspiracy

3.       It was a purpose and object of the conspiracy for the Defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) causing the submission of false and fraudulent claims for reimbursement to Medicare, TRICARE, and private insurers for purportedly compound prescription medications; (b) concealing the submission of such false and fraudulent claims and the receipt and transfer of proceeds from the fraud; and (c) diverting proceeds of the fraud for the personal use and benefit of the Defendants and their co-conspirators.

## Manner and Means of the Conspiracy

The manner and means by which the Defendants and their co-conspirators sought to accomplish the purpose and object of the conspiracy included, among others, the following:

4.     NICHOLAS A. BORGESANO, JR., EDWIN PATRICK YOUNG, JOSEPH DEGREGORIO, and their co-conspirators would obtain and maintain control of and operate A to Z Pharmacy, Medplus/New Life Pharmacy, Metropolitan Pharmacy, Havana Pharmacy, Jaimy Pharmacy, Pharmachoice, and Prestige Pharmacy, which purported to provide compound prescription medications;

5.     NICHOLAS A. BORGESANO, JR., EDWIN PATRICK YOUNG, JOSEPH DEGREGORIO, and their co-conspirators would submit and cause the submission of false and fraudulent reimbursement claims on behalf of A to Z Pharmacy, Medplus/New Life Pharmacy, Metropolitan Pharmacy, Havana Pharmacy, Jaimy Pharmacy, Pharmachoice, and Prestige Pharmacy for compound medications purportedly provided to Medicare beneficiaries, TRICARE beneficiaries, and privately insured beneficiaries that had not, in fact, been provided as claimed, had not been legitimately prescribed, and had not been legitimately compounded, including through the use of wire communications in interstate commerce, and would receive payment for such claims.

6.    In total, these pharmacies were used to cause the submission of approximately $633,943,828 in claims for prescription compounded medications and received approximately $157,428,599 in reimbursement payments.

7.    NICHOLAS A. BORGESANO, JR., BRADLEY SIRKIN, SCOTT D. PICCININNI, WAYNE M. KREISBERG, MATTHEW N. STERNER, PETER D. WILLIAMS, and their co-conspirators would pay and cause to be paid kickbacks and bribes, and would receive kickbacks and bribes, in exchange for prescriptions and patient information that would be used to submit false and fraudulent reimbursement claims for compounded medications.

8.    NICHOLAS A. BORGESANO, JR., and his co-conspirators would establish and maintain a relationship with ABFS whereby A to Z Pharmacy would receive payments from ABFS based on false and fraudulent reimbursement claims for prescription compound medications that A to Z Pharmacy submitted to PBMs.

9.    NICHOLAS A. BORGESANO, JR., BRADLEY SIRKIN, SCOTT D. PICCININNI, WAYNE M. KREISBERG, MATTHEW N. STERNER, PETER D. WILLIAMS, and their co-conspirators would unlawfully use unique identifying information of Medicare, TRICARE, and/or privately insured beneficiaries to cause the submission of false and fraudulent reimbursement claims to PBMs for prescription compound medications.

10.    NICHOLAS A. BORGESANO, JR., EDWIN PATRICK YOUNG, and their co-conspirators would submit and cause the submission of claims for

reimbursement for prescription compound medications falsely and fraudulently representing that such drugs contained certain pharmaceutical ingredients when they did not.

11.     NICHOLAS A. BORGESANO, JR., and his co-conspirators would not collect copayments from recipients of compound prescription drugs in order to conceal the fraud scheme.

12.     NICHOLAS A. BORGESANO, JR., BRADLEY SIRKIN, SCOTT D. PICCININNI, EDWIN PATRICK YOUNG, WAYNE M. KREISBERG, MATTHEW N. STERNER, PETER WILLIAMS, JOSEPH DEGREGORIO, would perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purposes of, and the acts done in furtherance of, said conspiracy.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
### (Conspiracy to Commit Money Laundering)
### (18 U.S.C. § 1956(h))

1.     Paragraphs 1 through 71 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.     Beginning in or around October 2012 and continuing through in or around December 2015, in the Middle District of Florida, and elsewhere, the defendants,

NICHOLAS A. BORGESANO, JR.,
BRADLEY SIRKIN,
SCOTT D. PICCININNI,
WAYNE M. KREISBERG, and
MATTHEW N. STERNER,

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, and agree with each other and with other persons, known and unknown to the Grand Jury, to commit offenses against the United States, that is,

a.   to knowingly conduct a financial transaction affecting interstate and foreign commerce, which financial transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

b.   to knowingly engage in a monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957.

It is further alleged that the specified unlawful activity is conspiracy to commit health care fraud and wire fraud in violation of Title 18, United States Code, Section 1349, health care fraud, in violation of Title 18, United States Code, Section 1347, and wire fraud, in violation of Title 18, United States Code, Section 1343.

### Manner and Means

3.     NICHOLAS A. BORGESANO, JR., and his co-conspirators would obtain and maintain control of A to Z Pharmacy and other pharmacies and cause the submission of false and fraudulent claims for reimbursement for prescription compound medications that were not provided as claimed, were not legitimately compounded, and were not legitimately prescribed.

4.     NICHOLAS A. BORGESANO, JR., and his co-conspirators would establish and maintain control of bank accounts for A to Z Pharmacy and other pharmacies into which reimbursement payments based on false and fraudulent claims would be deposited, which reimbursement payments would then be transferred and disbursed among co-conspirators.

5.     NICHOLAS A. BORGESANO, JR., BRADLEY SIRKIN, SCOTT D. PICCININNI, WAYNE M. KREISBERG, MATTHEW N. STERNER and their co-conspirators would create, obtain, and maintain control over shell companies and other entities, and bank accounts for such shell companies and other entities, including, among others, NB Holdings, NB Investment, Premier Bio-Tech, N.I.C. Marketing, Biotech Marketing, Biotech Advisory, WMK Marketing, Tinto, D Class,

and Southeast Medical Consulting, in order to conceal the fraud and the fraud proceeds.

6.      NICHOLAS A. BORGESANO, JR., BRADLEY SIRKIN, SCOTT D. PICCININNI, WAYNE M. KREISBERG, MATTHEW N. STERNER and their co-conspirators would cause the transfer of monies between and among NB Holdings, NB Investment, Premier Bio-Tech, N.I.C. Marketing, Biotech Marketing, Biotech Advisory, WMK Marketing, Tinto, D Class, Southeast Medical Consulting, and other entities in order to conceal the fraud and the fraud proceeds.

7.      NICHOLAS A. BORGESANO, JR., WAYNE M. KREISBERG, MATTHEW N. STERNER and their co-conspirators would purchase vehicles, vessels, and real property in monetary transactions of greater than $10,000 using proceeds from the fraud scheme.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS 3 through 12
### Money Laundering
### (18 U.S.C. § 1957)

1.      Paragraphs 1 through 71 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates set forth below in each count, in the Middle District of Florida, and elsewhere, the defendants,

NICHOLAS A. BORGESANO, JR.,
BRADLEY SIRKIN,
SCOTT D. PICCININNI,
WAYNE M. KREISBERG, and
MATTHEW N. STERNER,

acting in concert with others, did knowingly engage and attempt to engage in monetary transactions affecting interstate commerce, by, through, and to a financial institution, in criminally derived property of a value greater than $10,000, and such property having been derived from specified unlawful activity:

| Count | Defendant | On or About Date | Monetary Transaction |
|-------|-----------|------------------|----------------------|
| 3 | NICHOLAS A. BORGESANO, JR. | Aug. 29, 2014 | The transfer by wire of $360,000 from A to Z Pharmacy's SunTrust Bank account ending 2567 to WMK Marketing's WellsFargo Bank account ending 7891. |
| 4 | NICHOLAS A. BORGESANO, JR. | Sep. 5, 2014 | The transfer by wire of $300,000 from NB Holdings' SunTrust Bank account ending 1322 to WMK Marketing's WellsFargo Bank account ending 7891. |
| 5 | BRADLEY SIRKIN | Jan. 21, 2014 | The deposit of $11,593 via check number 1322 payable to "Premier Biotech" from NIC Marketing's TDBank account ending 1257, into TDBank account ending 1133. |
| 6 | BRADLEY SIRKIN | Jan. 27, 2014 | The deposit of $11,721 via check number 1345 payable to "Premier Biotech" from NIC Marketing's TDBank account ending 1257, into TDBank account ending 1133. |

| Count | Defendant | On or About Date | Monetary Transaction |
|---|---|---|---|
| 7 | SCOTT D. PICCININNI | Jan. 7, 2014 | The deposit of $84,072 via check number 1006 payable to "NIC Marketing Group" from Biotech Marketing Group's SunTrust Bank account ending 5545, into TDBank account ending 1257. |
| 8 | SCOTT D. PICCININNI | Jan. 24, 2014 | The deposit of $56,754 via check number 1014 payable to "NIC Marketing Group" from Biotech Marketing Group's SunTrust Bank account ending 5545, into TDBank account ending 1257. |
| 9 | WAYNE M. KREISBERG | Sep. 11, 2014 | The transfer of $200,000 via check number 1001 payable to "NIC Marketing Group" from WMK Marketing Group Wells Fargo Bank account ending 7891, into TD Bank account ending 1257. |
| 10 | WAYNE M. KREISBERG | Dec. 7, 2014 | The transfer of $50,000 via check number 1010 payable to "NIC Marketing" from WMK Marketing Group Wells Fargo Bank account ending 7891, into TD Bank account ending 1257. |
| 11 | MATTHEW N. STERNER | Aug. 26, 2014 | The deposit of $300,000 via check number 3439107045 payable to "Southeast Medical Consulting LLC" from MedPlus Pharmacy SunTrust Bank account ending 4494, into JPMorgan Chase Bank account ending 2789. |

| Count | Defendant | On or About Date | Monetary Transaction |
|-------|-----------|------------------|----------------------|
| 12 | MATTHEW N. STERNER | Oct. 14, 2014 | The deposit of $50,000 via wire transfer for credit to Southeast Medical Consulting LLC's JPMorgan Chase Bank account ending 2789, from NB Holdings Group SunTrust Bank account ending 1322. |

It is further alleged that the specified unlawful activity is conspiracy to commit health care fraud and wire fraud, in violation of Title 18, United States Code, Section 1349, and health care fraud, in violation of Title 18, United States Code, Section 1347, and wire fraud, in violation of Title 18, United States Code, Section 1343.

In violation of Title 18, United States Code, Sections 1957 and 2.

## FORFEITURE

1.      All of the allegations contained above are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981 and 982, and Title 28, United States Code, Section 2461(c).

2.      Upon conviction of a violation of Title 18, United States Code, Section 1349, as alleged in Count One of this Indictment, the defendants shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, and pursuant to Title 18, United States Code, Section 981, and Title 28,

United States Code, Section 2461(c), all property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section 1349.

3.     Upon conviction of a violation of Title 18, United States Code, Section 1956 or 1957, the defendants shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property.

4.     The property to be forfeited includes, but is not limited to, the following:

   a. A forfeiture money judgment of at least $157,428,599;

   b. The real property located at 8000 Brighton Drive, Port Richey, Pasco County, Florida;

   c. The real property located at 5550 Westshore Drive, New Port Richey, Pasco County, Florida;

   d. The real property located at 5319 U.S. Highway 19, New Port Richey, Pasco County, Florida;

   e. The vacant land described as Lot 58, Flor-A-Mar Section 14-G Phase 2;

   f. The real property located at 4927 U.S. Highway 19, New Port Richey, Pasco County, Florida;

   g. The real property located at 10331 County Lake Drive, Port Richey, Pasco County, Florida;

   h. The real property located at 8019 Ridge Road, Port Richey, Pasco County, Florida;

   i. The real property located at 5141 Westshore Drive, New Port Richey, Pasco County, Florida;

j.  The real property located at 11308 Tayport Loop, New Port Richey, Pasco County, Florida;

k.  The real property located at 5629 Sea Turtle Court, New Port Richey, Pasco County, Florida;

l.  The real property located at 340 Lagoon Drive South, Copiague, Suffolk County, New York;

m.  The real property located at 9364 North Florida Avenue, Tampa, Hillsborough County, Florida;

n.  The real property located at 9370 North Florida Avenue, Tampa, Hillsborough County, Florida;

o.  The real property located at 9435 Royal Palm Avenue, New Port Richey, Pasco County, Florida;

p.  The real property located at 18132 Patterson Road, Odessa, Hillsborough County, Florida;

q.  The real property located at 5293 Iroquois Avenue, Spring Hill, Hernando County, Florida;

r.  The real property located at 2320 Moon Shadow Road, New Port Richey, Pasco County, Florida;

s.  The real property located at 6625 NW 122 Avenue, Parkland, Florida;

t.  A 1936 Ford Deluxe automobile, Vehicle Identification Number 183159004, registered to Defendant MATTHEW N. STERNER;

u.  A 1964 Chevrolet Corvette convertible automobile, Vehicle Identification Number 40867S121133, registered to Defendant MATTHEW N. STERNER;

v.  A 1967 Chevrolet Camaro convertible automobile, Vehicle Identification Number 124677N157239, registered to Defendant MATTHEW N. STERNER;

w.  A 1967 Chevrolet Camaro automobile, Vehicle Identification Number 123377L155082, registered to Defendant MATTHEW N. STERNER;

x.  A 1968 Chevrolet Corvette convertible automobile, Vehicle Identification Number 194678S426924, registered to Defendant MATTHEW N. STERNER;

y.  A 1970 Chevrolet Monte Carlo automobile, Vehicle Identification Number 138570F123058, registered to Defendant MATTHEW N. STERNER;

z.  A 2007 Ferrari Model F430 convertible automobile, Vehicle Identification Number ZFFEW59A570153224, registered to Defendant MATTHEW N. STERNER;

aa. A 2008 Lamborghini convertible automobile, Vehicle Identification Number ZHWGU22T08LA06083, registered to Defendant NICHOLAS ANTHONY BORGESANO, JR;

bb. A 2001 Ferrari automobile, Vehicle Identification Number ZFFYU51A010123361;

cc. A 2015 Cadillac sport utility vehicle, Vehicle Identification Number 3GYFNDE39FS632853;

dd. A 2007 Bentley automobile, Vehicle Identification Number SCBDR33WX7C048920;

ee. A 2008 Porsche automobile, Vehicle Identification Number WP0AB29828U780459;

ff. A 2011 BMW automobile, Vehicle Identification Number WBAKA4C50BC613089;

gg. A 2007 Lamborghini automobile, Vehicle Identification Number ZHWGU22T67LA05583;

hh. A 2014 Mercedes Benz E350 Sedan, Vehicle Identification Number WDDHF5KB2EA886925;

ii. A 2009 Cigarette Racing Team 50'7" fiberglass cabin inboard vessel, Hull Identification Number CRTUSN02E809, registered to Defendant NICHOLAS A. BORGESANO JR.;

jj. A 2016 Polaris Slingshot Racer motorcycle, Vehicle Identification Number 57XAAPFA6G5109867, registered to NB Motorsports;

kk. A 2014 Yamaha 11' vessel, Hull Identification Number YAMA3696D414, registered to Defendant MATTHEW N. STERNER;

ll. A 2014 Yamaha 11' vessel, Hull Identification NumberYAMA3697D414, registered to Defendant MATTHEW N. STERNER; and

mm.   A 2015 Triton tilt tandem trailer, Vehicle Identification Number 4TCSM1125FHL37120, registered to Defendant MATTHEW N. STERNER.

5.     If any of the property described above, as a result of any act or omission of the defendant:

a.     cannot be located upon the exercise of due diligence;

b.     has been transferred or sold to, or deposited with, a third party;

c.     has been placed beyond the jurisdiction of the court;

d.     has been substantially diminished in value; or

e.     has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL,

_____
FOREPERSON

A. LEE BENTLEY, III
United States Attorney

By:  _____
CHRISTOPHER J. HUNTER
Senior Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice

By:  _____
ROBERT A. MOSAKOWSKI
Assistant United States Attorney
Chief, Economic Crimes Section

No.                                                                    FILED

# UNITED STATES DISTRICT COURT
## Middle District of Florida
### Tampa Division

2016 AUG -3  PM 3: 19

CLERK US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA FLORIDA

### THE UNITED STATES OF AMERICA

vs.

NICHOLAS A. BORGESANO, JR.,
BRADLEY SIRKIN,
SCOTT D. PICCININNI,
EDWIN PATRICK YOUNG,
WAYNE M. KREISBERG,
MATTHEW N. STERNER,
PETER D. WILLIAMS, and
JOSEPH DEGREGORIO

## INDICTMENT

Violations:

18 U. S. C. §§ 1349, 1956(h), 1957 and 982

A true bill

_____
Foreperson

Filed in open court this 3rd day

of August 2016.

_____
Clerk

Bail $_____